# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Union Commercial Services
Limited,

              Plaintiff,

v.

FCA International Operations
LLC and FCA US LLC,

              Defendants.

Case No. 16-cv-10925

Judith E. Levy
United States District Judge

Mag. Judge Stephanie Dawkins
Davis

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS II-XII [9]

This case is currently before the Court on defendants' motion to dismiss Counts II-XII of plaintiff's complaint.[1]  (Dkt. 9.)  On March 14, 2016, plaintiff filed a complaint against defendants alleging two counts of breach of contract, promissory estoppel, tortious interference with business relations, four counts of civil RICO violations, and a Lanham Act violation.  (Dkt. 1.)  On April 21, 2016, defendants filed a motion to dismiss all counts except Count I, a breach of contract claim.  (Dkt. 9.)

---

[1] Plaintiff has brought nine counts against defendants, but misnumbered the counts, including I-VIII, and then skipping to XII.

For the reasons set forth below, the Court grants defendants' motion to dismiss Counts II-XII.

## I.    Background

Plaintiff is a commercial entity organized under the laws of the Cayman Islands, and owned by Angolan residents Joao M. Varvalho, Joao Carlos Varvalho, and Sandra Maria Goncalves.  (Dkt. 1 at 1.)   It has sold Chrysler, Dodge, and Jeep motor vehicles and parts in the Republic of Angola since 1988.  (*Id*. at 4.)  In 2006, plaintiff entered into a distributorship agreement (Agreement) with Chrysler International Corp. to sell these products in the Republic of Angola.  After Chrysler emerged from bankruptcy, defendant FCA US LLC (FCA US) assumed the agreement, and then assigned it to defendant FCA International Operations LLC (FCA International).  (*Id*. at 4–5.)  The parties operated under this Agreement for seven years.  (*Id*. at 5.)

Plaintiff alleges that the breakdown of its business relationship with defendants occurred when defendants began bribing Angolan government and military officials to obtain an improper advantage in the Angolan auto market.  (*Id*. at 17–18.)   Specifically, in 2010, defendants allegedly began working with Grupo Auto-Star S.A. (Auto-

2

Star), an Angolan auto distributor owned by Persons A, B, and C, and other members of the Angolan government and military. (*Id*. at 10.) Persons A, B, and C are allegedly high-ranking members of the Angolan government, and plaintiff alleges it would be unsafe to reveal their identities. (*Id*. at 10 n.3.) By 2011, defendants were shipping Chrysler products to Auto-Star even though Auto-Star was not an authorized distributor of these products. (*Id*. at 18–19.)

In February 2011, Auto-Star allegedly approached plaintiff about acquiring an ownership interest in plaintiff. (*Id*. at 13.) Plaintiff refused the offer, purportedly because Article 13.6 of the Agreement prohibited plaintiff from being owned, in whole or in part, by a foreign government. (*Id*. at 14.) Two years later, in 2013, plaintiff notified defendant FCA International that Auto-Star was purchasing and selling Chrysler products in the Republic of Angola without authorization. (*Id*. at 15.) FCA International denied knowledge of these alleged sales, yet, on July 30, 2013, sent plaintiff a notice to terminate the Agreement, effective August 31, 2014. (*Id*. at 15–16.)

After the Agreement was terminated, plaintiff lost its right to sell Chrysler, Dodge, and Jeep products in the Republic of Angola. Plaintiff

filed this complaint, alleging that defendant FCA International's behavior breached two provisions of the Agreement; tortiously interfered with its business relations; should be held liable under the doctrine of promissory estoppel; and constitutes an act of unfair competition under section 1126 of the Lanham Act. Plaintiff also claims that the acts of both defendants constitute a pattern of racketeering in violation of the RICO statute, 18 U.S.C. §§ 1962(a)-(d).

## II.   Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A well pleaded complaint may proceed even if it appears that a recovery is very

4

remote and unlikely." *Id.* at 556 (internal quotation marks omitted). But, a plaintiff must plead facts sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

## III.   Analysis

For the reasons set forth below, the Court will grant defendants' motion to dismiss Counts II-XII.

### A. Count II

Plaintiff has alleged that defendant FCA International violated the implied covenant of good faith and fair dealing, and thereby breached Article 13.6 of the Distributorship Agreement, which requires plaintiff to comply with, *inter alia*, the Foreign Corrupt Practices Act (FCPA).   (Dkt. 1-1 at 21.)   Specifically, plaintiff claims that FCA International not only failed to comply with or make efforts to comply with the FCPA, but also that FCA International violated this statute by conspiring with Auto-Star to bribe Angolan officials.

Under Michigan law, a breach of the implied covenant of good faith and fair dealing may be invoked as a breach of contract claim

5

when one party "makes its performance a matter of its own discretion." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003). "Discretion arises when the parties have agreed to defer decision on a particular term of the contract," *id.*, or "omits terms or provides ambiguous terms." *Wedding Belles v. SBC Ameritech Corp., Inc.*, Case No. 250103, 2005 WL 292270, at *1 (Mich. App. Feb. 8, 2005). "Whether a performance is a matter of a party's discretion depends on the nature of the agreement." *ParaData Comp. Networks, Inc. v. Telebit Corp.*, 830 F. Supp. 1001, 1005 (E.D. Mich. 1993). A party may not invoke the implied covenant of good faith and fair dealing to override express contract terms." *Stephenson*, 328 F.3d at 826; *Gen. Aviation v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990).

Plaintiff has failed to state a claim for breach of contract for several reasons. First, the text of Article 13.6 is primarily directed at plaintiff's obligations, not defendant, and speaks in mandatory, rather than discretionary, terms. At most, plaintiff may have an argument that Article 13.6(1) is subject to the implied covenant of good faith and fair dealing because it refers to "Chrysler or any DaimlerChrysler Group Company's efforts to comply" with the FCPA. (Dkt. 1-1 at 21–

6

22.) Under a generous reading of the provision, the "efforts to comply" language may suggest that FCA International's performance was within its discretion and therefore that the implied covenant of good faith and fair dealing applies. *See ParaData Comp. Networks, Inc.*, 830 F. Supp. at 1006 (holding that "duty of best efforts" is an example of discretionary language that would permit a party to invoke the implied covenant of good faith and fair dealing).

However, plaintiff has failed to sufficiently plead that FCA International breached any part of Article 13.6 by violating the FCPA by engaging in bribery. Plaintiff has pled only "upon information and belief"[2] that defendants were involved in bribery, and has not provided any of the necessary information or context for its belief other than reference to public media reports and investigations into the auto industry for corruption in countries other than the Republic of Angola. Generalizations and evidence of corruption in other instances cannot serve to sufficiently allege that FCA International is liable in this specific case. *See Leapers, Inc. v. First Quality Distrib., Inc.*, Case No.

---

[2] The Sixth Circuit does not appear to have decided whether a plaintiff may plead on "information and belief" under Fed. R. Civ. P. 8. *See In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) (plaintiff argued that such exception existed, and the court did not decide the issue, holding that even if such an exception existed, plaintiff failed to meet the Rule 8 standard).

11-15058, 2012 WL 1714938, at *9 (E.D. Mich. May 15, 2012) (stating that even where courts have permitted parties to plead "upon information and belief," the pleadings contained some factual information such as relevant dates, identifications of products or services at issue, and detailed accounts of how statutes were violated). Accordingly, defendants' motion to dismiss Count II is granted.

B. Count III

As an alternative to its Count I breach of contract claim, plaintiff has brought a separate claim for promissory estoppel regarding defendant FCA International's obligation to repurchase all parts delivered to plaintiff at the time the Agreement is terminated.  (Dkt. 1 at 31–33.)

Although plaintiff is generally entitled to bring alternative claims that are inconsistent, *Alexander Assocs., Inc. v. FCMP, Inc. et al.*, Case No. 10-12355, 2012 WL 1033464, at *11–12 (E.D. Mich. Mar. 27, 2012), neither party disputes that the Agreement is valid and governs the relationship between the parties.  The Agreement also contains an integration clause, Article 15.1(1) (Dkt. 1-1 at 26), and plaintiff has not alleged any facts to suggest that promises outside of the contract exist.

8

Permitting plaintiff to bring a breach of contract and promissory estoppel claim under these circumstances would impermissibly allow plaintiff "a second bite at the apple in the event it fails to prove" its Count I breach of contract claim. *Gen. Aviation, Inc.*, 915 F.2d at 1042. Accordingly, defendants' motion to dismiss Count III is granted.

C. Count IV

Plaintiff has alleged that defendant FCA International tortiously interfered with plaintiff's business relationship with purchasers of Chrysler, Dodge, and Jeep motor vehicles and parts, including the Angolan government and military. (Dkt. 1 at 33–34.) Plaintiff alleges that FCA International knew of plaintiff's business relationships and unjustifiably interfered through its acts of bribery, thereby causing a breach or termination of those relationships and causing damages, including lost profits. (*Id.*)

To plead tortious interference with business relations under Michigan law, a plaintiff must allege "(1) the existence of a valid business relation or expectancy; (2) that the defendant knew of the relationship or expectancy; (3) that the defendant intentionally interfered by improperly inducing or causing a breach or termination of

the relationship or expectancy; and (4) that defendant's improper or unjustified interference resulted in injury to the plaintiff." *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913, 921 n.7 (6th Cir. 2000).

Plaintiff has failed to adequately state a claim for tortious interference with business relations. First, even assuming that plaintiff was the sole distributor in Angola for eighteen years (Dkt. 1 at 4–5), plaintiff has not claimed that it was legally entitled to continue to serve as the sole operator in the Angolan auto market. Therefore, FCA International's use of other distributors in the Angolan auto market does not suggest that it has interfered with any of plaintiff's valid business expectancy. Second, plaintiff has failed to adequately plead that defendant FCA International engaged in bribery, as set forth above. Thus, plaintiff has failed to sufficiently plead that FCA International intentionally interfered with plaintiff's relationships with its Angolan customers and that its actions resulted in injury to plaintiff. Plaintiff cannot overcome its deficient pleading by alleging that Auto-Star "and/or a related company" sold Chrysler products in the Republic of Angola without authorization. (Dkt. 1 at 11–13, 15.) These alleged

10

actions might suggest illegal activity, but they fail to suggest that these actions were done to intentionally interfere with plaintiff's business relations or caused plaintiff to lose sales in an unlawful manner. Accordingly, plaintiff has failed to state a plausible claim, and defendants' motion to dismiss Count IV is granted.

D. Counts V, VI, VII, and VIII

Plaintiff alleges that defendants and Auto-Star constitute an enterprise, the FCA Auto-Star Enterprise, that engaged in and conspired to engage in acts related to the bribery of Angolan officials that constitute a pattern of racketeering in violation of the RICO statute, 18 U.S.C. §§ 1962(a)-(d).

To have standing to bring a civil RICO claim, a plaintiff must allege that defendant's conduct caused a domestic injury to plaintiff's "business or property by reason of a violation of section 1962." *RJR Nabisco, Inc. v. European Community*, ___ U.S. ___, 136 S. Ct. 2090, 2111 (2016); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 483 (1985); 18 U.S.C. § 1964(c). And, defendant's conduct under any subpart of section 1962 must be "not only . . . a 'but for' cause of [plaintiff's] injury, but . . . the proximate cause as well." *Holmes v. Sec.*

11

*Investor Prot. Corp.*, 503 U.S. 258, 269 (1992); *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 419 (6th Cir. 2013).[3]

 i. Standing

 Plaintiff does not have standing to bring a civil RICO claim because plaintiff has not pleaded a domestic injury. The Supreme Court has not addressed how to assess whether a plaintiff has suffered a domestic injury for purposes of a civil RICO claim. But, the Supreme Court and Sixth Circuit have repeatedly emphasized that section 1964(c) was modeled on the Clayton Act and frequently held that the same rules should apply to both statutes. *See, e.g.*, *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152–53 (1987) (holding that because the RICO Act was modeled on the Clayton Act, the same statute of limitations should apply to both); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612 (6th Cir. 2004) ("Because Congress modeled this provision on similar language in the antitrust laws (§ 4 of the Clayton Act and § 7 the Sherman Act) and because the antitrust laws have been interpreted to require that a private plaintiff show

---

[3] Because plaintiff cannot state a claim for a civil RICO violation under the domestic injury or causation elements, the Court will not address the remaining elements that must be pleaded to state a claim under each subpart of section 1962.

proximate cause in order to have standing to sue, RICO civil claims also require proximate cause.").

The extraterritorial scope of the antitrust statutes is determined by assessing whether a defendant's conduct is intended to or has produced "substantial effects" in the United States, an inquiry sometimes referred to as the "domestic injury" test. *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 925 (D.C. Cir. 1984); *see also F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 166 (2004) (discussing the "domestic injury" exception to inability to regulate foreign conduct under the antitrust statutes). Although this test is applied to assess the extraterritorial scope of a statute, it does so by looking at whether the effect of a defendant's conduct – or the injury – is foreign or domestic. Thus, it appears that the inquiry may also be used to determine whether a plaintiff has sufficiently alleged a domestic injury. Because nothing in the text of the statutes requires different rules for assessing whether an injury is foreign or domestic, and given the Supreme Court's emphasis on applying the same rules to the RICO and antitrust statutes where possible, the Court will apply the

13

"substantial effects" test to determine whether plaintiff has suffered a domestic injury.[4]

Applying this test, plaintiff has not adequately pleaded a domestic injury. Plaintiff is an entity organized in the Cayman Islands or Republic of Angola, has its principal place of business in the Republic of Angola, and is owned by Angolan citizens. Under its Agreement with defendants, plaintiff was permitted to distribute Chrysler, Dodge, and Jeep products only in the Republic of Angola. (Dkt. 1-1 at 5, 32.) Thus, the only specific injury of which plaintiff complains – lost sales and lost profits – occurred entirely outside of the United States. And, assuming it is true that defendants intended to obtain an improper advantage in the market at plaintiff's expense, the intention was directed solely at the Angolan auto market. In sum, defendants' alleged conduct was directed at, and any effects were felt by, plaintiff's business or property interests outside of the United States.

---

[4] The Supreme Court recently stated that civil RICO claims do not apply to foreign injuries while the Clayton Act may reach such injuries, but this was because the definition of "person" was different between the statutes. *RJR Nabisco, Inc.*, 136 S. Ct. at 2109. However, the Supreme Court did not suggest that the textual differences justified a different approach to otherwise determining the extraterritorial scope of the two statutes. Therefore, it appears appropriate to assess whether plaintiff's injury is domestic using the "substantial effects" test.

Plaintiff's arguments to the contrary are unavailing. First, plaintiff alleges that it has a business office and bank accounts in Florida. (Dkt. 18 at 19–20.) But again, plaintiff is incorporated and has its principal place of business outside of the United States,[5] and all of its sales occurred in the Republic of Angola. Plaintiff's reliance on the transfer of some funds related to the Agreement through the office and accounts in Florida is unpersuasive. The substantial effect of defendants' conduct remains to business interests outside of the United States.

Plaintiff next alleges that it has suffered a domestic injury because its right to purchase vehicles in the United States was impaired. (Dkt. 18 at 19.) If plaintiff suffered a loss of its right to purchase vehicles in the United States, the cause of this was the termination of the Agreement, not the acts of bribery plaintiff alleges as the predicate acts of its civil RICO claim. Because plaintiff must be injured "by reason of a violation of section 1962," 18 U.S.C. § 1964(c), an injury from a breach of contract cannot sustain its RICO claim.

---

[5] Plaintiff stated at the October 4, 2016 hearing that the Agreement (Dkt. 1-1) incorrectly refers to plaintiff as an Angolan corporation. Plaintiff claims instead to be organized under the laws of the Cayman Islands. Regardless, neither of these locations is in the United States, and does not help plaintiff substantiate that it has suffered a domestic injury.

Finally, plaintiff claims a domestic injury because the Agreement with defendants requires resolution of disputes in the United States. An agreement to resolve complaints in the United States does not confer standing on a plaintiff to bring any claim it wishes regardless of whether plaintiff meets the constitutional or statutory requirements for standing.   Accordingly, plaintiff has failed to sufficiently plead a domestic injury to overcome defendants' motion to dismiss.

   ii.   Causation

Even assuming that plaintiff has sufficiently pleaded a domestic injury, plaintiff has not sufficiently pleaded causation to survive a motion to dismiss.  Plaintiff alleges that defendants' actions, all related to the bribery of Angolan officials, have caused injury to its business or property because defendants were able to sell motor vehicles and parts at a price lower than was available to plaintiff.  (Dkt. 1 at 35, 37, 38, 40.)  Plaintiff alleges that this advantage enjoyed by defendants and the FCA Auto-Star Enterprise directly and proximately caused plaintiff damages, including, "but [] not limited to, lost profits."  (*Id.*)

Plaintiff has not offered any allegations or facts relating to how defendants' alleged acts of bribery and racketeering affected the

16

Angolan government or that the officials who were bribed were in a position to influence the market structure. At most, plaintiff offers that the president of the Republic of Angola issued a regulatory framework to benefit defendants and Auto-Star, but does not offer any basis for suggesting this allegation is plausible. "A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460–61 (2006) (no proximate cause where plaintiff alleged that a defendant competitor committed wire and mail fraud to improperly disadvantage plaintiff in the market); *Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 887, 890–91 (6th Cir. 2000) (no proximate cause where plaintiff alleged that it lost sales because defendants bribed another party to obtain a contract); *Grantham and Mann, Inc. v. Amer. Safety Prods., Inc.*, 831 F.2d 596, 606 (6th Cir. 1987) (no proximate cause because it was ultimately the breach of contract that was the proximate cause of lost profits). Thus, plaintiff cannot establish that defendants' alleged acts of racketeering are directly related to plaintiff's alleged injury. Accordingly, defendants' motion to dismiss Counts V-VIII is granted.

E. Count XII

Finally, plaintiff alleges that defendant FCA International's acts of bribery violate section 1126 of the Lanham Act because bribery is an act of unfair competition, as defined by Article 10*bis* of the Paris Convention for the Protection of Industrial Property (Paris Convention).

Section 1126(h) of the Lanham Act provides that "[a]ny person designated in subsection (b) of this section . . . shall be entitled to effective protection against unfair competition," and to that end makes available to these designated persons "the remedies provided in this chapter for infringement of marks . . . [insofar] as they may be appropriate in repressing acts of unfair competition."  15 U.S.C. § 1126(h).  Section 1126(b) of the Lanham Act defines the scope of persons entitled to bring suit under section 1126(h) as "[a]ny person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party," but only "to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law."  15 U.S.C. § 1126(b).

Because the United States and the Republic of Angola are parties to the Paris Convention, plaintiff may invoke Article 10*bis* of this Convention through section 1126(b) of the Lanham Act. Article 10*bis* requires signatory nations to "assure to nationals of such countries effective protection against unfair competition," and defines "an act of unfair competition" as "[a]ny act of competition contrary to honest practices in industrial or commercial matters." Paris Convention, Art. 10*bis*(2). The third subsection of Article 10*bis* lists certain acts that "in particular shall be prohibited":

(i)    All acts of such a nature as to create confusion by any means whatever with the establishment, the goods, or the industrial or commercial activities, of a competitor;

(ii)   False allegations in the course of trade of such a nature as to discredit the establishment, the goods, or the industrial or commercial activities, of a competitor;

(iii)  Indications or allegations the use of which in the course of trade is liable to mislead the public as to the nature, the manufacturing process, the characteristics, the suitability for their purpose, or the quantity, of the goods.

Paris Convention, Article 10*bis*(3).

There is no definition of unfair competition in the Lanham Act and the Sixth Circuit has not ruled on whether Article 10*bis* of the

19

Paris Convention and section 1126 of the Lanham Act permit a plaintiff to bring a bribery claim. The federal courts of appeal that have addressed the scope of the unfair competition provision, however, have cabined its scope to those acts of unfair competition covered in the substantive provisions of the Lanham Act. Specifically, these courts have held that although section 1126 was intended to implement the Paris Convention, this Convention "was not intended to define the substantive law in the area of 'unfair competition' of the signatory countries." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 908 (9th Cir. 2002). Rather, section 1126 "ensures 'national treatment,'" or guarantees that foreign citizens receive the same treatment by a member country as that member country gives to its own citizens. *Id.* Therefore, there is no "general federal law of unfair competition," and the scope of unfair competition is governed solely by the substantive provisions of the Lanham Act. *Id.* at 907, 908; *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 484–85 (2d Cir. 2005); *Int'l Café, S.A.L. v. Hard Rock Café Int'l*, 252 F.3d 1274, 1278 (11th Cir. 2001); *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 597 (4th Cir. 1992).

This Court agrees with the federal precedent discussed above, and concludes that the scope of unfair competition is limited to the substantive provisions of the Lanham Act. These substantive provisions address unfair actions related to marks, such as registration, trademark or trade dress infringement, misuse of geographical origin marks, and false advertising. *See, e.g.*, *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014) (noting that the Lanham Act covers private actions to protect trademarks and trade dress); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504 (6th Cir. 2007) (trademark infringement case including an unfair competition claim related to such infringement). In other words, the Lanham Act addresses a specific subset of unfair competition claims related to certain forms of intellectual property, and does not permit a plaintiff to sue for *any* act that it considers unfair competition. Thus, plaintiff's bribery claim is not cognizable under the Lanham Act.

That a bribery claim falls outside the scope of the Lanham Act is further supported by the statement of statutory intent that Congress

included in section 1127.[6]  Section 1127 references protection against unfair competition as a statutory purpose, but read in context, the reference indicates that such protection must relate to the use of marks in commerce.   This reading is supported by the placement of the Lanham Act in the United States Code:  the relevant chapter is titled, "Trademarks."  Moreover, even if plaintiff were correct in contending that the Paris Convention's unfair competition provisions were broader than those under the Lanham Act, arguably any such unfair competition claim must relate to intellectual or industrial property, given that the Paris Convention covers only industrial property.

The Court is aware of the case on which plaintiff relies, *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 684 (E.D. Mich. 1996).  In that case, plaintiffs alleged that defendants violated the unfair competition provisions of the Paris Convention, as incorporated in section 1126 of the Lanham Act, by conspiring to steal

---

[6] The statutory intent provisions states:  "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations."  15 U.S.C. § 1127.

22

and use plaintiff's trade secrets.   In dicta, the court noted that commercial bribery was covered by the Paris Convention and therefore was actionable under section 1126 of the Lanham Act.   *Id*. at 690 n.4. However, this Court is not persuaded by this dictum for two reasons. First, the precedent relied on by the *General Motors* court has since been clarified or overturned by the relevant circuits, which now hold that the Paris Convention does not expand the substantive rights of the Lanham Act.   *See Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 484–85 (2d Cir. 2005); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 908 (9th Cir. 2002).   Second, even the *General Motors* case involved a form of intellectual property – trade secrets.   Thus, this Court is not persuaded that *General Motors* is analogous to or controlling in this case.

Even assuming that a commercial bribery claim is cognizable under the Lanham Act, as set forth above, plaintiff has failed to sufficiently plead facts from which the Court could reasonably infer that defendant FCA International is liable for bribery.   Accordingly, the Court grants defendants' motion to dismiss Count XII.

## IV.  Conclusion

For the reasons set forth above, defendants' motion to dismiss Counts II-XII (Dkt. 9) is GRANTED.

IT IS SO ORDERED.

Dated: November 10, 2016          s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 10, 2016.

                                 s/Felicia M. Moses
                                 FELICIA M. MOSES
                                 Case Manager