# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Union Commercial Services
Limited,

                Plaintiff,

v.

FCA International Operations
LLC, FCA US LLC,

                Defendants.

_____/

Case No. 16-cv-10925

Judith E. Levy
United States District Judge

Mag. Judge Stephanie Dawkins
Davis

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL [38] AND DENYING PLAINTIFF'S MOTION TO COMPEL [41]

### I. Background

Plaintiff Union Commercial Services is a former Chrysler, Jeep, and Dodge automobile distributor based in the Republic of Angola. It filed suit against defendants FCA International Operations ("FCA IO") and FCA US (collectively, "defendants") in response to a dispute arising out of defendants' termination of its distributorship agreement with plaintiff. The Court issued an order dismissing Counts II-XII of the complaint on November 10, 2016 (Dkt. 19), and only Count I remains.

Count I alleges breach of contract. Plaintiff claims defendants breached the distributor agreement ("the agreement") when they failed to repurchase auto parts plaintiff purchased from them during the course of their business relationship. (Dkt. 1 at 29.) Article 14.4(x) of the agreement requires defendants to repurchase parts when certain preconditions are met. (Dkt. 38 at 10-11.) Specifically, Article 14.4(x) states, in pertinent part, that defendants shall repurchase

> all Parts delivered by CHRYSLER to DISTRIBUTOR . . . CHRYSLER will only be obliged to repurchase Parts that are *unsold, undamaged, unused, in their original packaging, stored in a state of the art manner, and appear on CHRYSLER's then-current Parts' listing.* The repurchase price for such Parts will be their landed cost to DISTRIBUTOR (CHRYSLER's invoice price plus unrebated duties, taxes and inland transportation costs) less 10% of such cost and less an adjustment to reflect any damage or other diminution in value not normal for current Parts being offered for sale at retail at the date of the repurchase. Together with the request to CHRYSLER to repurchase Parts, DISTRIBUTOR shall provide a complete list of Parts to be repurchased. The list shall contain the relevant Parts number, the invoice number, and the date of invoice and the amount of invoice for each of the Parts to be repurchased . . .

(*Id.* (emphasis added).) Plaintiff alleges defendants failed to repurchase $840,000 worth of parts, causing damages in the amount of $760,000. (Dkt. 38-3 at 7.)

In the first set of interrogatories defendants served upon plaintiff, Interrogatory 7 asked plaintiff to "[s]tate the total amount of damages sought by you" and "[e]xplain in detail how such amounts were calculated." (*Id.*) Defendants' Document Request 4 asked plaintiff to "[p]roduce all documents that refer, reflect or relate to the damages that you are seeking in this lawsuit." (Dkt. 38-2 at 9.) Plaintiff explained that it calculated its damages "by determining the cost to UNION for the Parts at approximately $840,000.00, and then subtracting 10% of such cost ($84,000) so the total amount is approximately $760,000.00." (Dkt. 38-3 at 7.) Plaintiff relied on its "electronic inventory management system" to determine the price it paid for the parts, and deducted 10% of that price to comply with the requirements of Article 14.4(x). (Dkt. 38 at 10-11.)

Defendants were not satisfied with plaintiff's response, and this dispute ensued. Defendants informed plaintiff that its interrogatory and document request required plaintiff to produce the parts purchase invoices underlying the data in its electronic inventory management system. (Dkt. 38 at 13.) Defendants also argue that plaintiff was

3

obligated to produce this information as part of its initial disclosures under Fed. R. Civ. P. 26(a)(1)(A)(iii). (*Id.*)

Plaintiff then served its own discovery on defendant asking for the same information, believing defendants, as the original sellers of the parts, had this information in their possession, custody, or control. (Dkt. 38-6.) Defendants tell the Court they do not have these invoices and related documents in their possession, custody, or control. (Dkt. 44 at 14-15.) Instead, the documents are contained in a parts database in France owned by Daimler AG, a competing automaker. (*Id.*) Plaintiff, by contrast, does possess hard copy invoices and other relevant documents in its storage container in Luanda, Angola. (Dkt. 43-1 at 3.) The documents are contained in "70 to 80 boxes" which are "organized by year" rather than by part number or type. (*Id.* at 3-4.) This method of organization makes the documents difficult to produce because the files cannot be pulled according to the part number, the key indicator of which parts are potentially eligible for repurchase. (*Id.*) Accordingly, it is not simple to separate the parts plaintiff alleges must be repurchased from those that need not be.

The parties, unable to resolve this dispute on their own, requested a call with the Court on October 11, 2017. The parties could not come to a resolution, and the Court granted leave to file these cross motions to compel. (Dkts. 38, 39.)

Each party asks the Court to order the other to produce the parts invoices described above. Defendants argue the invoices are relevant because, based on the invoices they have seen, plaintiff overstates the price it paid for the parts in the first instance, and plaintiff should produce those invoices because a "party's unwieldy record-keeping system is not an adequate excuse to frustrate discovery." (Dkt. 38 at 14, 22.) According to plaintiff, finding the relevant hard copy documents and producing them is unduly burdensome and disproportionate to the needs of the case. (Dkt. 43 at 15-16.) Instead, the price information it has provided thus far is sufficiently trustworthy because its parts spreadsheet is an internal record created in the regular course of business. (*Id.*) In addition, the price plaintiff paid is higher than defendant expects because of the high costs associated with importing goods into Angola. (*Id.* at 17.)

In its motion to compel, plaintiff asks the Court to order defendants to produce the invoice information, alleging the information is stored in a database that defendants can access. (Dkt. 41 at 19.) Defendants contend that the database is owned by Daimler AG, and it has no access to its contents. (Dkt. 44 at 15.) In addition, plaintiff seeks information from defendant about prior parts repurchases from former distributors in the United States. (Dkt. 41 at 12.)

For the reasons set forth below, the Court grants defendants' motion to compel (Dkt. 38) and denies plaintiff's motion to compel. (Dkt. 41.)

## II. Parts Invoices and Related Documents

Federal Rule of Civil Procedure 26(b) allows parties to "obtain discovery regarding a nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In the course of discovery, a party may request that an opposing party produce documents in "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Documents meet the "possession, custody, or control" standard when "the party has actual possession, custody, control, or the legal right to obtain the

6

documents on demand." *S2 Automation, LLC v. Micron Tech., Inc.,* No. CIV 11–0884, 2012 WL 3656454, at *33 (D.N.M. August 9, 2012) (citing *In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir. 1995)). Moreover, discovery material is within a party's control when the party has the "practical ability to obtain the documents, particularly when the opposing party does not have the same practical ability to do so." *Id.* (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 138 (2d Cir. 2007)) (internal quotations removed).

Here, each party moves the Court to order the other party to produce invoices from the sale of parts plaintiff wishes defendant to repurchase.[1] Defendants argue they cannot produce the invoices because the invoices are not in their possession, custody, or control. Plaintiff responds that even though the invoices are within their possession, custody, or control, the Court should not require it to

---

[1] Plaintiff's document request asked for
> All commercial invoices, pro forma invoices, consular invoices, packing lists, bills of landing, air way bills, ocean bills of lading [sic], certificates of origin, electronic export information, shipper's export declarations, sipper's letters of instructions, inspection certificates, cargo insurance certificates, dock receipts, warehouse receipts or comparable documents relating to any and all parts sold by the FCA Defendants to UNION and/or its local Angolan dealership Unicar.

(Dkt. 38-6 at 9.) Defendant asked plaintiff to produce "all documents that refer, reflect or relate to the damages you are seeking in this lawsuit." (Dkt. 38-2 at 9.)

7

produce the invoices because they are stored in "70 to 80 boxes" in hard copy and sorted by year, ensuring that production of these documents will be unduly burdensome and disproportionate to the needs of the case.

As a threshold matter, only plaintiff has the invoices in its "possession, custody, or control," and "[r]ule 34(a) requires the party served with a request for production to produce any designated documents which are in the possession, custody or control of the party upon whom the request is served." *See H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, No. Civ. 3:02CV2259(PCD), 2003 WL 22305148, at *2 (D. Conn. August 10, 2003) (internal formatting omitted) (Dkt. 43-1 at 2.) Defendants, by contrast, do not have the responsive documents in their "possession, custody, or control," and, thus, cannot produce them.[2] Even if defendants did possess these documents, it is highly unlikely they would also have documents identifying the various

---

[2] Defendant has represented throughout the litigation that Daimler, A.G., a competitor to defendants, possess all of the documents responsive to plaintiff's request for invoices in a database located in France. (Dkt. 38-7 at 5; Dkt. 44 at 16.) Plaintiff cites to the Master Transaction Agreement related to defendants' bankruptcy proceedings in 2009 as evidence defendants possess the documents requested, but defendants explain that Daimler had already divested its interest in defendants by the time the agreement plaintiff cites became operational. (*Id.* at 15.) Accordingly, the agreement plaintiff cites did not apply to Daimler, and could not have required Daimler to transfer the documents plaintiff seeks to defendants.

import taxes and transportation costs plaintiff alleges drove up the cost of each part above invoice price. Thus, plaintiff is the only party that can make a complete production.

Given that only plaintiff can make a complete production, requiring it to do so despite the great difficulty it alleges it will endure in producing the documents is not an undue burden or disproportionate to the needs of the case. (*See* Dkt. 43-1 at 4.) The "mere fact that responding to a discovery request would involve producing a significant number of documents or would involve inconvenience and expense is, standing alone, not a sufficient showing of burdensomeness to garner protection from the Court." *SMA Portfolio Owner, LLC v. Corporex Realty & Inv., LLC*, No. CV 11-168-DLB-JGW, 2014 WL 12647934, at *2 (E.D. Ky. March 5, 2014) (quoting *Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC,* 227 F.R.D. 348, 360-61 (W.D. Ky 2011)). More specifically, "that a responding party maintains records in different locations, utilizes a filing system that does not directly correspond to the subjects set forth in Plaintiffs' [discovery request], or that responsive documents might be voluminous does not suffice to sustain a claim of undue burden." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1033

(E.D. Cal. 2010) (quoting *Greystone Constr. Inc. v. Nat'l Fire & Marine Ins. Co.,* No. 07–cv–00066–MSK–CBS, 2008 WL 795815, at *6 (D. Col. March 21, 2008)); *see also Prime Aid Pharm. Corp. v. Express Scripts, Inc.*, No. 4:16–CV–1237 (CEJ), 2017 WL 67526, at *4 (E.D. Mo. January 6, 2017) ("The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information."); *SMA Portfolio Owner*, 2014 WL 12647934 at *2 (same); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.,* No. CIV. A. 88-9752, 1991 WL 111040, at *2 (E.D. Penn. June 17, 1991) ("[C]ourts have held that an unwieldy record-keeping system, which requires heavy expenditures in money and time to produce relevant records, is simply not an adequate excuse to frustrate discovery.").

Here, plaintiff's primary argument for why it should not be required to produce the invoices is that its filing system contains "70 to 80" boxes of invoices, in hard copy, sorted by year, that will take as long as six months to search by hand. (Dkt. 43-1 at 3-4.) But, plaintiff cannot use its "unwieldy record keeping system" to shield it from

10

discovery. *See Prime Aid Pharm. Corp.*, 2017 WL 67526 at *4. These invoices are important documents in this litigation, as they provide the basis for plaintiff's damages claim. Defendants have a right to understand how the damages plaintiff claims against them were calculated, and are entitled to examine the underlying documents to determine the claim's accuracy. Even though plaintiff "utilizes a filing system that does not directly correspond to the subjects set forth in Plaintiffs' [discovery request], [and] responsive documents might be voluminous," plaintiff must still explain to defendant how it calculates its damages by furnishing proof within its possession, custody, or control. *See Thomas*, 715 F. Supp. 2d at 1033.

Plaintiff's argument that producing these documents is disproportionate to the needs of the case is unavailing. Plaintiff asserts the "endeavor at UNION's storage container in Luanda, Angola would take months to complete and . . . FCA should be required to cover the expense." (Dkt. 43 at 21.) However, it is plaintiff who brought this case, and plaintiff who retains the burden to prove its damages. Plaintiff cannot shift the expense of proving its case onto defendant by claiming it would experience a great burden otherwise. That is

precisely the risk it took when it filed this litigation. The Court will not protect parties from any burden in discovery, only "undue burden[s]." *See Thomas*, 715 F. Supp. 2d at 1033. When a burden is necessary to prove something as crucial to plaintiff's case as damages, the burden, especially on the party bringing the suit, is neither undue nor disproportionate to the needs of the case. *Cf. State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *3 (E.D. Mich. Nov. 26, 2013) ("To determine whether a burden is undue, a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it.").[3]

Plaintiff additionally argues the spreadsheet listing the price of each part that it has already produced to defendant is trustworthy as a record made in the regular course of business, and thus satisfies

---

[3] Plaintiff contends that, as written, defendants' document request is overbroad because it would encompass documents beyond the "specific invoices and documents for the approximate three thousand (3,000) unique types of Parts subject to the repurchase request." (Dkt. 43 at 19.) The breadth of the request does not change the Court's analysis, as defendants need access to any and all documents on which plaintiff's damages calculation is based. This need extends beyond just the invoice and documents explaining transportation costs, to include other documents identifying additional costs plaintiff may have incurred in the import of defendants' goods.

defendant's discovery request.[4] This argument, however, is similarly unavailing. Plaintiff seeks to rely on the presumption of trustworthiness that Federal Rule of Evidence 803(6) bestows upon a record made in the regular course of business. However, 803(6) is a rule of evidence that governs the admissibility at trial of an out of court statement, and has no bearing on the discovery process. Even if 803(6) did apply in this situation, defendants are not required to rely on plaintiff's assertion of trustworthiness. Rather, they are entitled to an opportunity to examine the data supporting plaintiff's claim for damages and use that data to rebut plaintiff's calculation if they believe the calculation is inaccurate. In fact, defendants have already identified two invoices currently in their possession that call into question whether certain entries in plaintiff's spreadsheet are accurate.[5] (Dkt. 38 at 15-16.)

---

[4] In addition, plaintiff argues this spreadsheet is all that is required by the agreement, and thus it should not have to produce the invoices and related documents. However, the Federal Rules of Civil Procedure determine the obligations of parties in federal civil litigation, not the terms of the parties' contract.

[5] Plaintiff contends that those two prices are not inaccurate because defendants' analysis omits "the substantial duties, taxes and transportation costs associated with transporting Parts to Angola." (Dkt. 43 at 17.) Plaintiff may very well be correct about the price difference between invoice and spreadsheet, but that is not a defense to the discovery request. Instead, it underscores the importance of the documents defendants seek by affirming that such documents are necessary for

For these reasons, plaintiff must produce the invoices and related documents requested in defendants' Document Request 4 and Interrogatory 7.

### III. Documents Related to Distributor Agreements in the United States

Plaintiff's motion to compel also seeks a court order requiring defendants to produce documents relating to defendants' repurchase of parts from former dealers in the United States.[6] Plaintiff contends that these documents are relevant and discoverable because they show how defendants "dealt with previous parts repurchase requests submitted by its distributors." (Dkt. 41 at 15.) Specifically, plaintiff seeks these documents in order to shed light on how defendant has interpreted two key terms in Article 14.4(x): storage in a "state of the art manner" and "then current parts list." (*Id.*) But, these two terms do not appear in

---

defendants to have an accurate and complete picture of how plaintiff calculated its damages.

[6] Plaintiff made three requests to defendants:
> **REQUEST NO. 1:** All documents relating to any Distributor's attempt to exercise its rights under Article 14.4(x) or a similar parts repurchase provision of any Distributor Agreement from February 1, 2006 to present.
> **REQUEST NO. 2**: All documents relating to how the repurchase price under Article 14.4(x) or a similar parts repurchase provision of any Distributor Agreement was determined by any party from February 1, 2006, to present.
> **REQUEST NO. 3:** All documents establishing the amount paid to any Distributor under Article 14.4(x) or a similar parts repurchase provision of any Distributor Agreement from February 1, 2006 to present.

(Dkt. 41 at 12.)

defendants' United States Distributor Agreements, and, accordingly, documents related to domestic repurchases are not relevant for the purpose plaintiff sets forth.

Article 14.4(x) of the agreement differs from the key provisions of the similar, but not identical, agreement defendants typically sign with domestic distributors. Article 14.4(x) obligates defendants to repurchase parts so long as those parts are "unsold, undamaged, unused, in their original packaging, *stored in a state of the art manner, and appear on CHRYSLER's then current Parts listing*." (Dkt. 44 at 9-10 (emphasis altered from original).) By contrast, the similar, relevant provision of FCA US's Distributor Agreement obligates it to repurchase "[a]ll new, unused and undamaged FCA US parts that are priced and *identified as eligible for return in FCA US LLC's then current parts list* and . . . are on the effective date of termination the *property of and in the possession, custody and control of DEALER*." (*Id.* at 10 (emphasis altered from original).)

Importantly, defendants' domestic agreements do not require dealers to store parts "in a state of the art manner" and only commits to repurchasing a certain subset of the parts on the "then current parts

15

list." The domestic contract does not require any type or quality of storage, as FCA US will repurchase parts that are the "property of and in the possession, custody and control of DEALER." Thus, domestic parts repurchases cannot shed light on how FCA IO interprets the meaning of the phrase "stored in a state of the art manner." Similarly, the domestic agreement limits the parts FCA-US must repurchase to those "identified as eligible for return in FCA US LLC's then current parts list." This contract term refers to only some of the parts on the "then current parts list," and interpretation of this contract term is thereby a different exercise than interpretation of the term as written in the agreement at issue in this case.

Because defendants' domestic and international Distributor Agreements contain different contract terms, discovery of documents relating to defendants' domestic repurchases will not inform plaintiff of the meaning of defendants' international repurchases.

## IV. Conclusion

For the reasons set forth above, plaintiff must supplement its response to defendant's Interrogatory 7 and Document Request 4. Plaintiff's supplemental response must comply with this opinion, and

must contain invoices and other documents supporting its calculation of damages. Plaintiff will have 180 days from the date of this order, or longer if the parties so stipulate, to produce the documents, and the Court's scheduling order will be amended accordingly.

In addition, the Court encourages the parties to meet and confer to determine whether a representative sample of the invoices in plaintiff's possession would provide defendants with sufficient information to defend their case. If the parties are amenable to using a sampling method, they must inform the Court they wish to do so within 60 days of this order.

IT IS SO ORDERED.

Dated: January 25, 2018  　　　　s/Judith E. Levy
Ann Arbor, Michigan  　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2018.

　　　　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　　　　Case Manager